IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

v.                                                                                          CIV 12-0482 LH/KBM
                                                                                                                 CR 07-0701 LH

JESUS MANUEL DIAZ,

    Defendant/Movant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

    THIS MATTER comes before the Court on the Order of Reference by the Honorable C. LeRoy Hansen (*Doc. 2*) filed May 8, 2012, to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.

    On April 28, 2011, Defendant/Movant Jesus Manuel Diaz ("Diaz") filed his Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255 (*Doc. 1*)[1] ("Motion"), which was fully briefed on November 1, 2013.  The Court, having considered the parties' filings, the relevant law, and otherwise being fully advised, recommends that Diaz's Motion be denied and this case be dismissed.

### **I. Background Facts**

    Diaz was the owner-operator of a one-rig trucking company known as JD

---

[1] The documents in this civil case have also been filed in the related criminal case, *United States v. Diaz*, CIV 07-0701 LH/KBM.  The document numbers are referenced herein as "Doc." for the civil docket and "Cr. Doc." for the criminal docket.

Easyline.  *Doc. 34* at 2–3.  Diaz owned only the tractor portion of the tractor-trailer at issue in this case.  *Doc. 17* at 21 n.3.  In March of 2007, Diaz arranged to provide a "hook and drop" to haul goods from California to Georgia using his tractor and a trailer owned by Richard Reicher.  *Doc. 31* at 3–4.  Diaz claims he did not load the trailer and his role was simply a common practice of hooking up a load, carrying it to another location, and dropping it off.  *Id.* at 5.

On the morning of March 19, 2007, Diaz arrived at Gallup Port of Entry ("POE") near the New Mexico-Arizona border.[2]  *Doc. 31* at 7.  Diaz walked into the lobby of the POE and stood in line with other drivers to obtain his permit.  Officer James Smid called him over to his window for inspection, where Diaz produced the requisite documents.  Officer Smid inspected the documents and asked Diaz about his whereabouts and activities.  *Id.* at 11–12.  The officer then directed Diaz to take his truck to Inspection Bay No. 2 for a "Level II safety inspection."  *Id.* at 12.  Officer Smid performed the Level II safety inspection and issued Diaz a report listing three violations -- an inoperable light bulb and two log-book violations.  *Cr. Doc. 91* at 4.

During the inspection, Officer Smid made several observations that led him to believe that Diaz may be involved in criminal activity.  *Cr. Doc. 91* at 2- 4.  After the inspection, Officer Smid sought Diaz's consent to search both the tractor and trailer.  *Cr. Doc. 91* at 5.  The officer provided Diaz with a "Consent to Search" form which Diaz signed and dated.  *Id.*  A search of the trailer revealed  more than 3000 pounds of marijuana, and Diaz was arrested for possession of marijuana with intent to distribute.

---

[2] **"**Section 65-5-1 of the NM Motor Transportation Act sets forth procedures for commercial motor vehicles entering or leaving the State, and generally requires that such vehicles stop at its ports of entry."  *United States v. Chaundoull*, CIV 9-0488 MCA, *Doc. 61*, Memorandum Opinion and Order of September 22, 2009 (citing N.M. Stat. Ann. § 65-5-1(A)).

*Id.* at 8.

Diaz's trial attorney, Brian A. Pori, moved to suppress the marijuana arguing that it was seized in violation of Diaz's Fourth Amendment rights. Pori conceded that Diaz "was subject to the regulatory search exception to the Fourth Amendment's warrant requirement," but contended that Diaz was unreasonably detained without reasonable suspicion. *Cr. Doc. 71* at 7-11. He also maintained that the prolonged encounter and search of the trailer was not supported by voluntary consent and that the scope of the search exceeded any consent that was given. *Cr. Doc. 71* at 14-17; *Cr. Doc. 83* at 8-12. After evidentiary hearing, the trial court denied the motion to suppress expressly finding that "Officer Smid permissibly conducted the Level Two inspection," the investigative detention was supported by reasonable suspicion, and consent to search was freely and voluntarily given. *Cr. Doc 91* at 12-14

Diaz proceeded to trial and was found guilty of possession with intent to distribute. *Doc. 1* at 2. Diaz timely appealed his conviction to the Tenth Circuit Court of Appeals, which affirmed the conviction. *United States v. Diaz*, 356 Fed. App'x. 117 (10th Cir. 2009). Diaz now seeks relief from his conviction and sentence pursuant to 28 U.S.C. § 2255.

## II. Diaz's Claims

"A federal prisoner is entitled to have his sentence vacated or corrected if it was 'imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack. . . .'" *United States v. Lee Vang Lor*, 706 F.3d 1252, 1255 (10th Cir. 2013) (quoting 28 U.S.C. § 2255(a)). Diaz first argues that he is innocent and that a jury instruction that was given violated his Constitutional rights. He also contends

that his conviction and sentence violate the Sixth Amendment right to effective assistance of counsel and sets forth several arguments including that trial counsel failed to: (1) argue that the Level II safety inspection exceeded the bounds of a regulatory search and was improperly used as a ruse for a criminal investigation; (2) argue that the use of evidence from the pretextual Level II safety inspection violated Diaz's Fifth Amendment and Ninth Amendment rights; (3) object to Officer Smid's testimony that Diaz loaded the trailer; and (4) secure an in-person expert on the standard practices in the trucking industry. Finally, Diaz claims his conviction and sentence violate the Fourth Amendment guarantee against unreasonable searches and seizures. *Doc. 17* at 1 – 5.

### III. Discussion

#### A. Diaz's Claim of Innocence and the Jury Instruction

Diaz alleges that he is innocent because he had no knowledge of the marijuana concealed inside the trailer portion of the rig. *Doc. 17* at 5. According to Diaz, he was only performing a "hook and drop" in which he simply hooked the locked and used one of his seals on the trailer without knowing what was inside. *Id.* at 1, 6, and 8-9. Yet Diaz's claims of actual innocence alone cannot provide a basis for habeas relief.

> Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact.

*Herrera v. Collins*, 506 U.S. 390, 400 (1993). Diaz therefore appears to link his claim of innocence with another alleged violation of his constitutional rights maintaining that the trial court improperly gave Jury Instruction No. 8, which stated:

4

> With respect to the question of whether or not a defendant knew that the controlled substance was present, you may, but are not required to, infer that the driver and sole occupant of a tractor-trailer rig has knowledge of the controlled substance within it. This inference does not relieve the government of its obligation to prove all the elements of the offense beyond a reasonable doubt.

*Doc. 17* at 7; *Cr. Doc. 121* at 9. Diaz contends that his conviction based upon this instruction violates the Fifth Amendment right to due process, Sixth Amendment right to a fair trial, and Eighth Amendment protection from cruel and unusual punishment.

### B. Fifth Amendment and Eighth Amendment Claims

While Diaz concludes that the jury was instructed in violation of his Fifth and Eighth Amendment rights, he fails to support this conclusion with any argument or citation to legal authority. Therefore, the Court need not consider them. *United States v. Almaraz*, 306 F.3d 1031, 1041 (10th Cir. 2002) (holding that a party's "perfunctory and cursory reference" to an issue "without citation to authority in support of a legal argument is inadequate to warrant consideration."); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991); *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (the court should not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues," nor should it "construct a legal theory on plaintiff's behalf").

### C. Sixth Amendment Claim

The United States Supreme Court has explained that "[i]nferences and presumptions are a staple of our adversary system [and] necessary for the trier of fact to determine the existence of an element of a crime -- that is an 'ultimate' or 'elemental' fact – from the existence of one or more 'evidentiary' or 'basic' facts." *County Court of Ulster County v. Allen*, 442 U.S. 140, 157 (1979). A **permissive** inference or

presumption allows, but does not require, the trier of fact to infer the ultimate fact from other evidence without placing any burden on the defendant.  *Id.*  The jury instruction at issue here sets forth a permissive inference, but does not require the jury to so infer. This is in stark contrast to a ***mandatory*** presumption which dictates to the jury a finding of proof of an elemental fact upon proof of some basic fact.  *Id.*

The jury was told that it could, but was not required to, draw an inference about Diaz's knowledge of the marijuana stored in the trailer because as the sole occupant of the rig, the trailer was in his possession and under his control.  *See United States v. Gwathney*, 465 F.3d 1133, 1143 (10th Cir. 2006).  In rejecting Gwathney's challenge to the same instruction, the Tenth Circuit explained, "[a] permissive inference instruction does not violate a defendant's Sixth Amendment rights provided there is a rational connection between the facts proved by the prosecution and the ultimate fact presumed, and the inferred fact is more likely than not to flow from the proven facts." *Id.*[3]  In this case, as in *Gwathney*, there is a rational connection between the basic fact proved by the prosecution – Diaz was the sole occupant of the tractor-trailer rig -- and the ultimate elemental fact – that Diaz knew the marijuana was in the trailer.

Diaz argues that, to his detriment, Instruction No. 8 improperly directs a finding by the jury that he was the "sole occupant" of the tractor-trailer rig.  Diaz maintains that he was not the sole occupant because the trailer was owned by another person.  *Doc. 17* at 7-8.  Such a contention defies the very definition of the term "occupant" which is

---

[3] The facts of *Gwatheny* are strikingly similar to the facts of this case.  Gwatheny was a commercial truck driver stopped at the Gallup, New Mexico Port of Entry. He did not own the truck he was driving but was the sole operator of the tractor-trailer containing drugs.  At trial, Gwathney claimed he had no knowledge of the drugs on his truck.  Coincidentally, Officer Smid was the officer who performed a Level II Inspection on Gwatheny's truck.  *Gwathney*, 465 F.3d at 1136-37.

commonly defined as "one who has possessory rights in, or control over, certain property or premises," Black's Law Dictionary (9th ed. 2009) or commonly described as "a person who resides or is present in a house, vehicle, seat, etc., at a given time," http://www.oxforddictionaries.com/definition/english/occupant. It is undisputed that Diaz was the only person present in the tractor-trailer rig and that he had possession and exercised sole control of the vehicle at the time he arrived at the New Mexico POE. Diaz cites no legal authority that supports the proposition that an "occupant" includes an owner even if the owner is not actually present.  Thus, Diaz's Sixth Amendment rights were not violated when the trial court instructed the jury that Diaz was the sole occupant of the tractor-trailer and allowed the permissive inference that he had knowledge of the marijuana inside the trailer.

    Beyond the permissive inference of knowledge by one who is in sole possession and control, admitted evidence also called into question Diaz's account of a mere "hook and drop" without knowledge of the trailer's contents.  In addition to the observations made by Officer Smid – that Diaz had four cell phones, the seal was not unique to the shipper but matched Diaz's own seals, the strong odor of air freshener, dust on the boxes in the back, and merchandise in a state of disrepair – other evidence presented at trial was consistent with an inference that Diaz had knowledge of contraband in the trailer.  That evidence includes:  Diaz's computer could create bills of lading identical to the one he presented to Officer Smid; Diaz possessed a bill of lading for a return trip from Georgia that was identical in every way to the one presented to Officer Smid except the cargo was listed in a different order; a receipt found in the cab of the tractor showed a purchase of shrink-wrap and corresponding bundles of shrink-wrap were

7

found inside the trailer; the seal on the trailer's door was within the sequence of seals found in Diaz's cab; and only one of Diaz's four "throw away" cell phones had any connection to Diaz's company; and a Dollar Store manager from California testified that a single company serves the company's southern California trucking needs. *Doc. 34* at 10-11.

Finally, the amount of marijuana found, over 3000 pounds, made it unlikely the owner would entrust it to someone without knowledge of its presence. *See, e.g., U.S. v. Berry*, 717 F.3d 823 at 831 (10th Cir. 2013). Based on the evidence, the jury could easily infer that Diaz had knowledge of the marijuana hidden in the trailer. Diaz has established neither innocence nor a constitutional violation by giving the jury instruction.

### D. Ineffective Assistance of Counsel Claims

Diaz asserts several instances of ineffectiveness of trial counsel, s*ee Doc. 17* at 9-54, and he bears the burden of showing a constitutional violation on such claims. *See United States v. Cronic*, 466 U.S. 648, 658 (1984).

> To succeed on an ineffective assistance of counsel claim under § 2255, a defendant has the twofold burden of establishing that (1) defense counsel's performance was deficient, *i.e.*, counsel's "representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms," and (2) defendant was prejudiced thereby, *i.e.*, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011) *cert. denied*, 132 S. Ct. 1818 (2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1980)). *Strickland* demands that the defendant show that the attorney's "representation fell below an objective standard of reasonableness" with "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

8

*Williams v. Taylor*, 529 U.S. 362, 390 (2000).  The Court must give "considerable deference to an attorney's strategic decisions" and "'recognize[s] that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690).

However, "[t]he court need not address whether counsel's performance was deficient if defendant fails to prove actual prejudice. Prejudice is shown if defendant establishes a reasonable probability that the outcome of the trial, sentencing, or appeal would have been different had counsel raised the omitted claim or argument." *United States v. Hill*, No. CR-05-111-L, 2009 WL 1531533 (W.D. Okla. June 1, 2009) (citing *Neil v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001), *cert. denied*, 537 U.S. 835, 123 S. Ct. 145 (2002

Diaz faults trial counsel for failing to argue that the Level II safety inspection performed by Officer Smid was a ruse or pretext for a criminal investigation. *Doc. 17* at 9-58.  However, Diaz cannot establish that his attorney's failure to make this argument caused him actual prejudice.  Diaz was lawfully required to stop at the POE for a regulatory safety inspection, and while he was there, any of the POE officers, including Officer Smid, could have lawfully requested at any time consent to search Diaz's tractor-trailer.   It was only after receiving consent from Diaz, **which Judge Hansen specifically found was knowingly and voluntarily given**, that Officer Smid conducted a search of the trailer and discovered the marijuana.  *Cr. Doc. 91* at 14-17.

Pori reasonably focused his suppression strategy on the validity of the consent and argued that the following factors compelled a conclusion that consent to search the

trailer was not freely given: "(1) he had already been detained more than a half hour; (2) there were two or three armed peace officers around him at the time; (3) the area was not open to the public and was outside the presence of other truck drivers; (4) he had already been repeatedly subjected to questioning; and (5) Officer Smid was in possession of his driver's license and other documents." *Cr. Doc. 91* at 15. Judge Hansen addressed these many factors but concluded that under the totality of the circumstances, the "weight of the evidence" demonstrated Diaz's consent was validly given and not the product of coercion. He therefore allowed the marijuana evidence to be introduced at trial.

Because discovery of the marijuana arose from a valid consensual search, there is no reasonable probability that the evidence would have been suppressed had counsel argued that raising the level of the required safety inspection was a pretext to obtain more information indicative of criminal activity. Indeed, the Tenth Circuit has found error when a district court

> focuse[s] on the subjective motivations of the officers, suggesting their desire to find something illegal about [the defendant] rendered the entire search unlawful. Where officers are engaged in a proper administrative search, the officers' motive is irrelevant; what matters is whether their conduct was objectively reasonable. *See Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (rejecting the idea that "an ulterior motive might serve to strip [officers] of their legal justification").

*U.S. v. Johnson*, 408 F.3d 1313, 1323 (10th Cir. 2005).

Diaz further argues that his attorney was ineffective for failing to object to Officer Smid's testimony that Diaz loaded the trailer and for failing to secure an in-person expert in the trucking industry. Doc. 17 at 58-60. The weight of the evidence makes it reasonably unlikely that Diaz's counsel could have done

**10**

anything differently during trial that would have changed the outcome of this case. Again, therefore, Diaz fails to establish actual prejudice.

### E. Fourth Amendment Claims

Finally, Diaz asserts that his Fourth Amendment rights were violated due to Officer Smid's alleged unreasonable search and seizure. *Doc. 17* at 60. However, Fourth Amendment violations are not reviewable in a § 2255 motion when the federal prisoner has had a full and fair opportunity to litigate the Fourth Amendment claim at trial and present issues on direct appeal. *See United States v. Lee Vang Lor*, 706 F.3d 1252, 1257 (10th Cir. 2013) *cert. denied*, 12-1412, 2013 WL 2392822 (U.S. Dec. 2, 2013); *United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993).[4]

In the Tenth Circuit, **"[**a]n 'opportunity' for full and fair consideration requires 'at least the procedural opportunity to raise or otherwise present a Fourth Amendment claim,' a 'full and fair evidentiary hearing,' and 'recognition of at least a colorable application of the correct Fourth Amendment constitutional standards.'" *Lee Vang Lor* at 1258 *(citation and quotations omitted)*. Although ineffective assistance of counsel may deny a defendant this opportunity, clearly that is not the case here.

Diaz fails to identify any procedural deficiencies in providing him with an opportunity to raise his Fourth Amendment claims both at trial and on appeal. In fact, Diaz's counsel did file a motion to suppress and did argue that Diaz was unreasonably detained and the trailer unreasonably searched. *Cr. Doc. 71*. As seen above, the trial court held an evidentiary suppression hearing and found that the search was

---

[4] Diaz additionally argues that there is a split in the circuits as to whether a prisoner may vindicate his rights under the Fourth Amendment through a 28 U.S.C. § 2255 proceeding. *Doc. 17* at 61; *Cr. Doc. 183* at 22. Regardless of any such "split," the law in the Tenth Circuit is clear and binding. *See Cook* 997 F.2d at 1371; *Lee Vang Lor,* 706 F.3d at 1257. Diaz was afforded a full and fair opportunity to litigate his Fourth Amendment claims and, therefore, those claims cannot be reviewed by this Court.

reasonable on three independent grounds. *Cr. Doc. 91*. Diaz's counsel also appealed the trial court's denial of his motion to suppress, arguing that the district court erred in upholding the search of the tractor and trailer and the Tenth Circuit affirmed. *Diaz*, 356 Fed. App'x at 123; *Doc. 1* at 2 (noting that on appeal Diaz claimed a violation of the Fourth Amendment protection against unreasonable searches and seizures due to the denial of his motion to suppress).

In his Reply, Diaz asserts that his attorney was ineffective in that he failed to present certain Fourth Amendment arguments, which he maintains are different than what was presented to the trial court. *Cr. Doc. 183* at 22. Diaz currently argues that the district court's denial of the motion to suppress is in violation of his Fourth Amendment rights because it resulted in the introduction of evidence obtained from a search that was unreasonable because it was nonconsensual, it exceeded the scope of any valid consent that was given and it was unreasonably lengthy. *Doc. 1* at 8. These identical arguments were made by trial counsel in the motion to suppress. *Cr. Doc. 71* at 9, 10, 12 and 15. Consequently, Diaz has had the opportunity to raise and present the merits of his Fourth Amendment claim.

## IV. Evidentiary Hearing Not Required

The federal habeas statute requires the district court to conduct an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Barboa*, 777 F.2d 1420, 1422 n.2 (10th Cir. 1985) (quoting 28 U.S.C. § 2255); *United States v. Ciocchetti*, 422 F. App'x 695, 703 (10th Cir. 2011) (same). In this case, the motion, files, and record of the case conclusively show that Diaz is entitled to no relief and, therefore, an evidentiary hearing

is unnecessary.

## IV. Conclusion and Recommendation

Diaz cannot establish his conviction and sentence was imposed in violation of the Constitution or laws of the United States or is otherwise subject to collateral attack, and an evidentiary hearing is not required. Accordingly, it is recommended that Diaz's Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255 be denied and this action dismissed with prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE